Case No. 14-CV-08680 (VEC)

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

In re:

      LEHMAN BROTHERS INC.,

                            Debtor.

MARY A. ORTEGON,

                            Appellant,

      - against -

JAMES W. GIDDENS, as Trustee for the SIPA
Liquidation of Lehman Brothers Inc.,

                            Appellee.

<u>ORAL ARGUMENT REQUESTED</u>

Case No. 14-CV-08680 (VEC)

Appeal arising from SIPA Liquidation Proceeding, United States Bankruptcy Court, Southern District of New York, Case No. 08-01420 (SCC)

**BRIEF OF THE APPELLEE TRUSTEE**

HUGHES HUBBARD & REED LLP
   James B. Kobak, Jr.
   Ned H. Bassen
   Meaghan C. Gragg
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Facsimile:  (212) 422-4726
Email:  james.kobak@hugheshubbard.com

*Attorneys for Appellee James W. Giddens, Trustee for the SIPA Liquidation of Lehman Brothers Inc.*

## TABLE OF CONTENTS

                                                  **Page**

PRELIMINARY STATEMENT ...............................................................................................1

JURISDICTIONAL STATEMENT .........................................................................................2

COUNTER-STATEMENT OF THE ISSUE PRESENTED ....................................................2

COUNTER-STATEMENT OF THE STANDARD OF REVIEW .........................................2

COUNTER-STATEMENT OF THE CASE .............................................................................3

ARGUMENT .............................................................................................................................7

THE BANKRUPTCY COURT DECISION DISALLOWING AND
EXPUNGING MARY ORTEGON'S CLAIM SHOULD BE AFFIRMED. .................................7

A.     LBI HAS NO OBLIGATION TO MS. ORTEGON BECAUSE HER AT
WILL OFFER WAS RESCINDED, SHE NEVER BEGAN WORK AT
LBI, AND THE $350,000 BONUS SHE SEEKS WAS NOT A
GUARANTEED "SIGN-ON BONUS." ......................................................................7

        1.     The Trustee Has Satisfied His Initial Burden of Demonstrating the
Absence of a Genuine Dispute as to Material Facts ..................................8

        2.     The Rescinded Offer Letter is Unambiguous that the $350,000 Bonus Was
Not Payable as a Guaranteed "Sign-on Bonus" Irrespective of Actual
Performance of Work ..................................................................................8

B.     MS. ORTEGON HAS MADE NO SHOWING SUFFICIENT TO
ESTABLISH A GENUINE ISSUE OF MATERIAL FACT ............................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Amies v. Wesnofske*, 174 N.E. 436 (N.Y. 1931) ............................................................................11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................12

*Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 415 B.R. 77 (S.D.N.Y. 2009) (Cote, J.) ...............................................................2, 3, 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................7

*D'Amico v. City of New York*, 132 F.3d 145 (2d Cir. 1998) ............................................................7

*Davis v. All Points Packaging & Distrib., Inc. (In re Quebecor World (USA), Inc.)*, 491 B.R. 363 (Bankr. S.D.N.Y. 2013) ..........................................................................................7

*Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342 (S.D.N.Y. 2013) ...................................11

*Gottlieb v. County of Orange*, 84 F.3d 511 (2d Cir. 1996) ...........................................................12

*In re Lehman Bros. Inc.*, No. 08-01420 (SCC) ................................................................................1

*Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.)*, 493 F.3d 82 (2d Cir. 2007) ..............................................................3

*Oscar de la Renta, Ltd. v. Mulberry Thai Silks, Inc.*, No. 08 Civ. 4341 (RJS), 2009 WL 1054830 (S.D.N.Y. Apr. 17, 2009) ....................................................................................12, 13

*Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251 (2d Cir. 2006) .........................15

*Wallace v. BMO Nesbitt Burns Corp.*, No. 01 CIV 7998 (JGK), 2002 WL 32063120 (S.D.N.Y. Nov. 25, 2002) .................................................................................................9, 10, 12

*XL Specialty Ins. Co. v. Agoglia*, Nos. 08 Civ. 3821 (GEL), 08 Civ. 4196 (GEL), 08 Civ. 5252 (GEL), 2009 WL 1227485 (S.D.N.Y. Apr. 30, 2009) .....................................................12

**STATUTES AND RULES**

15 U.S.C. §§ 78aaa .........................................................................................................................1

28 U.S.C. § 158(a) ..........................................................................................................................2

11 U.S.C. § 510(b) ........................................................................................................................15

Fed. R. Civ. P. 56 ............................................................................................................................7

Appellee James W. Giddens (the "Trustee"), as trustee for the liquidation of the business of Lehman Brothers Inc. ("LBI") under the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. §§ 78aaa *et seq.*, submits this brief in opposition to the appeal filed by claimant Mary A. Ortegon from the Supplemental Order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") Granting the Trustee's One Hundred Ninety-Ninth Omnibus Objection to General Creditor Claims (the "Order Granting Trustee's Objection," JA-492).[1]

## PRELIMINARY STATEMENT

Mary Ortegon's appeal challenges the Bankruptcy Court's Order granting the Trustee's motion for summary judgment based on its straightforward determination that the LBI estate has no liability to Ms. Ortegon on her claim for a $350,000 bonus. Ms. Ortegon does not dispute that the $350,000 bonus she is claiming was contained in an offer letter of at will employment; she does not dispute that LBI was entitled to rescind the offer for any reason; she does not dispute that LBI rescinded its offer; and she does not dispute that she never began work at LBI or performed any work whatsoever for LBI. Given these undisputed facts, the Bankruptcy Court properly decided as a matter of law that where, as here, the $350,000 bonus contained in Ms. Ortegon's offer letter was not a guaranteed "sign-on bonus," but rather was part of her compensation for the performance year 2007, and was payable at the end of the performance year, LBI has no payment obligation to Ms. Ortegon for the bonus. In view of the foregoing, Ms. Ortegon has not come forward with any showing that there is a genuine dispute as

---

[1] The Order Granting Trustee's Objection was issued on October 20, 2014 by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), *In re Lehman Bros. Inc.*, No. 08-01420 (SCC) (SIPA). This SIPA liquidation is separate and distinct from the Chapter 11 proceedings of Lehman Brothers Holdings Inc., and we respectfully request that the docket for this appeal be corrected accordingly.

to any material fact and that the Trustee was not entitled to judgment as a matter of law as to her claim. Ms. Ortegon argues that there are factual issues as to (i) whether Ms. Ortegon became an employee, despite the fact that she cannot dispute and has acknowledged the fact that LBI rescinded her offer before she ever actually started work at LBI, (ii) why LBI rescinded the offer, and (iii) what amount of the $350,000 bonus would have been paid in conditional equity awards if she were entitled to payment despite the fact that there is nothing showing that she is entitled to payment. None of these purported factual issues is either genuine or material.

The Bankruptcy Court agreed with the Trustee that under the terms of the rescinded offer letter, Ms. Ortegon is not entitled to a $350,000 bonus given that she never worked at LBI (never began her employment by LBI) because her at will offer of employment was rescinded, and that therefore her claim against the LBI estate should be disallowed and expunged. The Trustee now asks this Court to affirm the Bankruptcy Court's decision.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158(a).

## COUNTER-STATEMENT OF THE ISSUE PRESENTED

The issue presented is whether the Bankruptcy Court erred in granting the Trustee's Motion for Summary Judgment on the Trustee's Objection to the General Creditor Claim Filed by Mary A. Ortegon (the "Summary Judgment Motion," JA-141) and ordering the disallowance and expungement of Mary Ortegon's claim for a $350,000 bonus.

## COUNTER-STATEMENT OF THE STANDARD OF REVIEW

A bankruptcy court's factual findings "are reversed only when they are clearly erroneous." *Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings Inc. (In re Lehman Bros. Holdings Inc.)*, 415 B.R. 77, 83 (S.D.N.Y. 2009) (Cote, J.). The party seeking to overturn these

findings "bears a heavy burden" and the "reviewing court must be left with a definite and firm conviction that a mistake has been made." *Id.* (citations and internal quotation marks omitted). A bankruptcy court's legal conclusions are reviewed *de novo. Id.* (citing *Official Comm. of Unsecured Creditors of AppliedTheory Corp. v. Halifax Fund, L.P. (In re AppliedTheory Corp.)*, 493 F.3d 82, 85 (2d Cir. 2007)).

## COUNTER-STATEMENT OF THE CASE

This is an appeal from the Bankruptcy Court's decision read into the record after hearing oral argument on October 7, 2014 (Hr'g Tr. JA-488:11-14), as implemented by its subsequent Order Granting Trustee's Objection. (JA-492.)

**Background**

On September 19, 2008, LBI was put into liquidation under the Securities Investor Protection Act. On May 10, 2009, Ms. Ortegon filed her proof of claim against the LBI estate (the "Claim") in the amount of $500,000 alleging breach of contract. The Trustee objected to the Claim on January 28, 2014, as part of the One Hundred Ninety-Ninth Omnibus Objection to General Creditor Claims (the "Trustee's Objection," JA-24), seeking disallowance and expungement of the Claim. Ms. Ortegon responded to the Trustee's Objection on February 14, 2014 (JA-46), and modified the Claim to $350,000 for the bonus amount contained in her rescinded offer letter. The Claim dispute went to mediation pursuant to the Bankruptcy Court's order governing hearing procedures and alternative dispute resolution procedures, and mediation occurred on April 22, 2014, and concluded without resolution of the dispute over the Claim.

**Mary Ortegon's Claim Into LBI**

By letter dated January 12, 2007, LBI made Mary Ortegon an offer of at will employment as a CAO in the Fixed Income Division, to report initially to Mo Grimeh. (Gragg

Decl.[2] Ex. 1, JA-161.)  The offer letter stated that "this letter is not a contract of continuing employment," and that "[y]our employment by the Firm is for no fixed term, and either you or the Firm may terminate the employment relationship at any time for any reason." (Gragg Decl. Ex. 1, JA-162 ¶¶ 7-8.)

Ms. Ortegon's employment with LBI was "expect[ed] . . . to begin on or about January 18, 2007." (Gragg Decl. Ex. 1, JA-161 ¶ 1.)  Her employment never began (LBI never employed her), however, because LBI rescinded its offer of at will employment by letter dated January 19, 2007.  (Gragg Decl. Ex. 2, JA-165.)

While not material, for background, before LBI rescinded the offer, LBI postponed Ms. Ortegon's start date to find out further details on an Executive MBA program that she had planned to attend.  (Gragg Decl. Ex. 3, JA-167.)  The details related to her time commitment to the Executive MBA program while working for LBI, *viz.*, that she would have to be out of the office for two days a month for the foreseeable future and that she planned to be out of the office for all of her first full week at LBI to attend the program.  (*Id.*)  Ms. Ortegon had disclosed her planned participation in the Executive MBA program during the LBI pre-employment process, but she failed to disclose the time commitments that her participation would entail.  (*Id.*)  While after Ms. Ortegon received an offer of at will employment and then disclosed the details of her time commitments, she offered to postpone her Executive MBA program, her prospective managers who were not previously aware of the time commitments, developed "serious concerns about the candidates reliability[/]responsibility." (Gragg Decl. Ex.

---

[2] "Gragg Decl." refers to the Declaration of Meaghan Gragg (JA-158) submitted with the Trustee's Summary Judgment Motion.

4

3, JA-168.)  Accordingly, during the pre-employment period, LBI rescinded Ms. Ortegon's offer of employment, and she never began work at LBI.

The rescinded offer letter contains the following language regarding compensation:

> For the performance year 2007 (your start date through November 30, 2007), your compensation will be as follows:
> 
> - Bi-weekly base salary of $5,769.23, which is the equivalent of $150,000 per year.
> 
> - A minimum bonus in the amount of $350,000, less applicable deductions, payable at the time the Firm pays its annual 2007 bonus distribution (on or about January 31, 2008).

(Gragg Decl. Ex. 1, JA-161 ¶ 2.)  The offer letter states that this bonus amount "will be paid at the time and in the amount stated except that it will not be payable if . . . before the date of scheduled payment, you have resigned or have been terminated . . . for substantial and continuing failure to perform employment duties or obligations satisfactorily," or because of misconduct or dishonesty, among other reasons.  (*Id.* ¶ 3.)  The offer letter further states that "[t]he bonus amount . . . may be reduced in the event of an approved leave of absence during the applicable performance year."  (*Id.* ¶ 4.)  The offer letter also provides that portions of the bonus would have been payable at LBI's discretion in conditional equity awards pursuant to the Firm's Equity Award Program.  (*Id.*)

The offer also letter states: "the terms and conditions of your employment by our Firm are governed by standard Firm policies."  (Gragg Decl. Ex. 1, JA-162 ¶ 8.)  Lehman's "Guide to Working at Lehman Brothers," the employee handbook that "outlin[ed] Lehman Brothers' policies and procedures," sets forth LBI's policies on "Compensation" and "Bonuses."

5

(Gragg Reply Decl.[3] Ex. 1, at JA-355, JA-361; Ex. 2, at JA-393, JA-397-JA-398.)  The policy on bonuses provides that "[b]onuses are not guaranteed unless otherwise agreed upon in writing, and are determined at the full discretion of senior Firm management." (*Id*.)  The Guide further provides, among other things, that "[b]onuses are contingent upon the approval of the final bonus pool by the Compensation and Benefits Committee of the Board of Directors of Lehman Brothers Holdings Inc.," and that "[o]nly individuals actively employed at the time bonuses are paid are eligible for a bonus," and that "employees who have been notified of their termination, or who are serving out any period of required notice, are not eligible for a full, partial or pro-rata bonus." (*Id*.)  The Guide also provides that "[c]ertain individuals may not receive a cash bonus in any given calendar year based upon their performance, business conditions or other factors." (*Id.*)

**The Motion Below and Bankruptcy Court's Decision**

On July 16, 2014, the Trustee filed a motion for summary judgment seeking disallowance and expungement of Mary Ortegon's Claim.  (JA-141.)  Ms. Ortegon responded on August 15, 2014 (JA-235), and the Trustee filed a reply on August 28, 2014 (JA-339).  The Bankruptcy Court heard argument on October 7, 2014, and after hearing oral argument read into the record its decision granting the Trustee's Summary Judgment Motion.  (Hr'g Tr. JA-488:11-13.)

The Bankruptcy Court ruled that the Trustee was entitled to judgment on Ms. Ortegon's claims for the reasons articulated by the Trustee's counsel at argument—that, among other things, Ms. Ortegon's at will offer of employment was rightfully rescinded by LBI, Ms.

---

[3] "Gragg Reply Decl." refers to the Declaration of Meaghan Gragg (JA-351) submitted with the Trustee's Reply Memorandum in Support of the Trustee's Motion for Summary Judgment on the Trustee's Objection to the General Creditor Claim Filed by Mary A. Ortegon (JA-339).

Ortegon never performed any work for LBI and therefore was never an employee of LBI, the $350,000 bonus contained in the rescinded offer letter was not guaranteed, the bonus would have been payable on January 31, 2008, over a year after Ms. Ortegon's expected start date, Lehman's policy on bonuses provided that employees are not eligible for bonuses if they are not actively employed when bonuses are paid, and that the entire tenor of the rescinded offer letter is that the bonus was to be compensation for work performed.  (Hr'g Tr. JA-488:11-13, JA-474:5-23, JA-485:8-JA-486:14.)

The Bankruptcy Court entered an Order implementing its decision granting the Trustee's Summary Judgment Motion on October 20, 2014.  (JA-492.)

On November 5, 2014, Mary Ortegon filed a Notice of Appeal.  (JA-497.)

## ARGUMENT

### THE BANKRUPTCY COURT DECISION DISALLOWING AND EXPUNGING MARY ORTEGON'S CLAIM SHOULD BE AFFIRMED.

**A.   LBI HAS NO OBLIGATION TO MS. ORTEGON BECAUSE HER AT WILL OFFER WAS RESCINDED, SHE NEVER BEGAN WORK AT LBI, AND THE $350,000 BONUS SHE SEEKS WAS NOT A GUARANTEED "SIGN-ON BONUS."**

Under Federal Rule of Civil Procedure 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).  Once the movant satisfies its initial burden of demonstrating the absence of a genuine dispute as to material facts, the non-moving party must present its own evidence to show that there is a genuine issue for trial.  *Davis v. All Points Packaging & Distrib., Inc. (In re Quebecor World (USA), Inc.)*, 491 B.R. 363, 368 (Bankr. S.D.N.Y. 2013) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

1. **The Trustee Has Satisfied His Initial Burden of Demonstrating the Absence of a Genuine Dispute as to Material Facts.**

The evidence in the record establishes beyond dispute that (i) the $350,000 bonus Ms. Ortegon is claiming was contained in an offer letter of at will employment dated January 12, 2007 (Gragg Decl. Ex. 1, JA-161), (ii) LBI rescinded its offer of at will employment by letter dated January 19, 2007 (Gragg Decl. Ex. 2, JA-165), and (iii) Ms Ortegon never actually started work at LBI or performed any work whatsoever for LBI (*id.*). Indeed, Ms. Ortegon does not dispute any of these facts. Thus, in view of the undisputed material facts, the Court may properly decide as a matter of law that where, as here, the $350,000 bonus contained in Ms. Ortegon's at will employment offer was not a guaranteed "sign-on bonus," but rather was part of her compensation for the performance year 2007, and was payable at the end of the performance year, LBI has no payment obligation to Ms. Ortegon for the bonus.

2. **The Rescinded Offer Letter is Unambiguous that the $350,000 Bonus Was Not Payable as a Guaranteed "Sign-on Bonus" Irrespective of Actual Performance of Work.**

The offer letter provides that, together with her base salary, the bonus was to be part of Ms. Ortegon's total "compensation," "[f]or the performance year 2007," and that the bonus would be "payable at the time the Firm pays its annual 2007 bonus distribution (on or about January 31, 2008)." (Gragg Decl. Ex. 1, JA-161 ¶ 1.) The offer letter further states that the bonus amount would be paid on the scheduled payment date, but would not be payable if, before the scheduled payment date, Ms. Ortegon resigned or was terminated for, among other things, "substantial and continuing failure to perform employment duties or obligations satisfactorily." (*Id.* ¶ 3.) In addition, the offer letter states that "the terms and conditions of your employment by our Firm are governed by our standard Firm policies." (Gragg Decl. Ex. 1, JA-162 ¶ 8.) Lehman's "Guide to Working at Lehman Brothers," the employee handbook that "outlin[es]

Lehman Brothers' policies and procedures," states that "[b]onuses are not guaranteed unless otherwise agreed upon in writing, and are determined at the full discretion of senior Firm management." (Gragg Reply Decl. Ex. 1, at JA-355; JA-361.)  The Guide further provides, among other things, that "[b]onuses are contingent upon the approval of the final bonus pool by the Compensation and Benefits Committee of the Board of Directors of Lehman Brothers Holdings Inc.," and that "[o]nly individuals actively employed at the time bonuses are paid are eligible for a bonus," and that "employees who have been notified of their termination, or who are serving out any period of required notice, are not eligible for a full, partial, or pro-rata bonus." (*Id.*)  It is undisputed Ms. Ortegon was not employed at the time the bonus was to be paid (January 31, 2008, over a year after Ms. Ortegon's expected start date), because it is undisputed that she never started work at all.

    The *BMO Nesbitt* case is instructive.  *Wallace v. BMO Nesbitt Burns Corp.*, No. 01 CIV 7998 (JGK), 2002 WL 32063120, at *6-7 (S.D.N.Y. Nov. 25, 2002).  In that case, as here, the plaintiff signed an offer letter of at will employment and, prior to starting work, the offer of at will employment was rescinded.  The *BMO Nesbitt* plaintiff moved for summary judgment, arguing that as a matter of law he was entitled to a "sign-on bonus" provided for in his offer letter. *Id.* at *5.  In contrast to Ms. Ortegon's rescinded offer letter, the *BMO Nesbitt* offer letter provided that the company would pay the plaintiff "as part of the total annual compensation . . . U.S. $200,000 of the annual bonus in the form of a 'sign-on bonus' payable within 30 day [sic] of your start date." *Id.* at *6 (alterations in original).  In a separate section the offer letter provided that "[a]s Compensation for services rendered, the Company [BMO] will pay you minimum total annual compensation of an annual base salary, [and] an annual bonus . . . ." *Id.* at *1-2 (last two alterations in original).  Thus, the *BMO Nesbitt* court found that the first

9

provision quoted above "indicate[d] that the 'sign-on bonus' was part of the first year Compensation described in [the second provision quoted above] 'for services rendered.'" *Id*. at 6. Accordingly, the *BMO Nesbitt* court found that there was "an issue of fact as to how to reconcile the provision labeled 'sign-on bonus' which, by its terms, suggests the $200,000 is due upon signing with the provision for first year compensation which could be read to require payment only for work actually done for BMO." *Id*. Thus, even where there was express language that a bonus was a "sign-on bonus" payable within 30 days of the expected start date, the court still found that it could not be determined as a matter of law that the bonus was due where the plaintiff never began work because his offer letter was rescinded, due to an indication in the offer letter that the bonus was meant to be compensation for work performed.

Unlike the offer letter at issue in *BMO Nesbitt*, Ms. Ortegon's employment offer did not contain any language indicating the $350,000 bonus was a "sign-on bonus." Further, as described above, Ms. Ortegon's offer letter is unambiguous that the bonus is part of her annual compensation "[f]or the performance year 2007 (your start date through November 30, 2007)," that it was "payable at the time the Firm pays annual 2007 bonus distribution (on or about January 31, 2008)," and that the bonus "will be paid at the time and in the amount stated . . . ." (Gragg. Decl. Ex. 1, JA-161 ¶¶ 2-3.) The language is clear that LBI's payment obligation did not vest until the date of scheduled payment. This reading of the rescinded offer letter is consistent with LBI's bonus policy, to which Ms. Ortegon was subject under the terms of the offer letter. Contrary to Ms. Ortegon's suggestion in her appeal brief argument, the Trustee's reading of the rescinded offer letter would not render any of its provisions superfluous where she never began work for LBI and therefore never began her employment by LBI.

10

Moreover, the *Altek* and *Amies* cases that Ms. Ortegon cites do not, contrary to Ms. Ortegon's brief, stand for the proposition that, because LBI exercised its undisputed right to rescind Ms. Ortegon's job offer before she started work for LBI, somehow the LBI estate is obligated under the offer letter for payment of the bonus, regardless of the fact that Ms. Ortegon indisputably never actually began work at LBI. *See Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 349 (S.D.N.Y. 2013) (finding, where board approval was a condition precedent to a patent license agreement between Altek and Kodak, and Altek had an obligation to make a good-faith effort to obtain board approval but instead merely forgot to send the final version of the agreement to the board before it was executed by Altek's president, that, because board approval was solely in Altek's control, Altek could not raise the nonoccurrence as a defense to Kodak's breach of contract claim; there was no such obligation here); *Amies v. Wesnofske*, 174 N.E. 436, 163-65 (N.Y. 1931) (finding, where the seller of property agreed to pay a broker a commission for procuring the sale, half to be paid on the contract, and half to be paid at closing, and the contract was drawn, but the closing did not occur because the buyer had a cash deficit and instead the seller and buyer agreed that the seller would retain the down payment and the property, that the balance of the commission was not due to the broker because the condition upon which payment of the balance depended had not been performed or waived on the principle that "the duty of a vendor to his broker is fulfilled if he remain passive and neutral; the condition, upon which the payment of the commission is made to depend, is waived only where the vendor is active to prevent or hinder its performance"; inapposite).

### B. MS. ORTEGON HAS MADE NO SHOWING SUFFICIENT TO ESTABLISH A GENUINE ISSUE OF MATERIAL FACT

Ms. Ortegon has not established facts sufficient to require trial or that additional discovery will uncover a genuine issue of material fact as to her Claim against the LBI estate for

11

a $350,000 bonus. The "substantive law governing the case will identify those facts that are material and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Wallace v. BMO Nesbitt Burns Corp.*, 2002 WL 32063120, at *5 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment is appropriate where, as here, it is clear that the non-movant cannot establish facts sufficient to require trial. *See, e.g.*, *XL Specialty Ins. Co. v. Agoglia*, Nos. 08 Civ. 3821 (GEL), 08 Civ. 4196 (GEL), 08 Civ. 5252 (GEL), 2009 WL 1227485, at *6, 14 (S.D.N.Y. Apr. 30, 2009) (citing *Gottlieb v. County of Orange*, 84 F.3d 511, 519 (2d Cir. 1996)) (recognizing that "where it is clear that the nonmoving party cannot defeat the motion by showing facts sufficient to require a trial for resolution, summary judgment may be granted," and granting summary judgment in a "straightforward matter of contract interpretation"); *Oscar de la Renta, Ltd. v. Mulberry Thai Silks, Inc.*, No. 08 Civ. 4341 (RJS), 2009 WL 1054830, at *5-6 (S.D.N.Y. Apr. 17, 2009) (summary judgment granted where defendant could not show that the discovery sought could "reasonably be expected to create a genuine issue of material fact" in light of the express terms of the agreement).

   Ms. Ortegon argues that there are factual issues as to (i) whether Ms. Ortegon became an employee, despite the fact that she cannot dispute and has acknowledged the fact that LBI rescinded her offer before she ever actually started work at LBI, (ii) why LBI rescinded the offer, and (iii) what amount of the $350,000 bonus would have been paid in conditional equity awards if she were entitled to payment despite the fact that there is nothing showing that she is entitled to payment. None of these purported factual issues is either genuine or material.

   First, there is no genuine factual issue as to whether Ms. Ortegon ever began work at LBI—she did not. Ms. Ortegon submits the following evidence in an attempt to manufacture

12

an issue: (i) internal emails discussing the postponement of Ms. Ortegon's expected start date and how to proceed with respect to Lehman's systems when she did not start ("John pushed Mary's start date back since she was already in PS.  When/If she starts, he will re-enter a start date or if she never starts we will term her in the system." (Brecher Decl.[4] Ex. F at JA-303)); ("Mary Ortegon will not be starting tomorrow. Not sure what you do to 'unhire' employees but right now we do not have a start date." (*Id.* at JA-304)); ("Were you able to speak with Donna about Mary Ortegon?  She's the employee that is in PS but never started so we do not want her to be on our pipeline or come up as a hire then a term."  (*Id.* at JA-305)); (ii) Ms. Ortegon's completed pre-employment paper work, including background check authorization, and employment application forms, all executed by Ms. Ortegon on January 16, 2007, before her offer was rescinded prior to Ms. Ortegon starting work (Brecher Decl. Ex. H, JA-323); and (iii) a Snapshot of FINRA's Central Registration Depository listing LBI as a former employer of Mary Ortegon for one day on January 17, 2007, the day prior to her expected start date, which never occurred because her offer was rescinded before she started (Brecher Decl. Ex. G, at JA-315-JA-316).  None of this, or anything else, raises a question of material fact as to whether Ms. Ortegon ever began work at LBI (and thus never began her employment by LBI).  She clearly did not, as the Bankruptcy Court correctly recognized.  *See Bay Harbour Mgmt., L.C.*, 415 B.R. at 83 (S.D.N.Y. 2009) (A bankruptcy court's factual findings "are reversed only when they are clearly erroneous."  The party seeking to overturn these findings "bears a heavy burden" and the "reviewing court must be left with a definite and firm conviction that a mistake has been made.") (internal quotation marks omitted).

---

[4]  "Brecher Decl." refers to the Declaration of Ethan A. Brecher (JA-262) submitted in support of Mary Ortegon's Opposition to the Trustee's Summary Judgment Motion.

Second, Ms. Ortegon has failed to raise any factual issue regarding the reason for LBI's rescission of her offer. Ms. Ortegon submits her EEOC charge affidavit (Brecher Decl. Ex. A, JA-266) and internal Lehman emails discussing LBI's discovery of Ms. Ortegon's Executive MBA program commitment (Brecher Decl. Ex. E, JA-299) to demonstrate a factual issue. But other than her own self-serving and unsupported statement in her affidavit of her own subjective belief that LBI rescinded her job offer because it discovered she had brought discrimination claims against two prior employers (Brecher Decl. Ex. A, JA-282-JA-283 ¶¶ 50-51), Ms. Ortegon does not bring forth any evidence that LBI rescinded her offer for any reason other than that it developed concerns about her reliability and responsibility due to her failure to adequately disclose the time commitment that her Executive MBA program would require. Ms. Ortegon does not bring forth any evidence whatsoever to substantiate her "belief" about the reason her offer was rescinded. Further, assuming *arguendo* that Ms. Ortegon had raised a genuine factual issue, LBI's reason for rescinding the offer of at will employment is not material to a determination of whether, under the terms of the offer letter, Ms. Ortegon was entitled to a $350,000 "sign-on bonus" when she never began work at LBI.

Finally, the rescinded offer letter states that a portion of the $350,000 bonus would be payable in conditional equity awards pursuant to Lehman's Equity Award Program. (Gragg Decl. Ex. 1, JA-161 ¶ 4.) Ms. Ortegon suggests there is a factual issue about the amount of the bonus that would have been paid in conditional equity awards. However, the Trustee has provided a copy of the Equity Award Program to Ms. Ortegon. If the bonus were payable at all, the amount that would have been payable in conditional equity awards would be determinable from the Equity Award Program documentation. But, even so, that determination is not material to the Trustee's summary judgment motion. The equity awards provision of the offer letter is

14

further evidence that the bonus was not a guaranteed cash bonus, and therefore, even if Ms. Ortegon were to have any entitlement to payment of the bonus, the amount of her unsecured claim would be reduced by the amount of the bonus that would have been payable in equity, because she would not be able to recover that amount as an unsecured creditor of the LBI estate, as a claim for equity awards would be subject to reclassification as equity interests and subordination under section 510(b) of the Bankruptcy Code.  11 U.S.C. § 510(b); *see also Rombro v. Dufrayne (In re Med Diversified, Inc.)*, 461 F.3d 251, 256-58 (2d Cir. 2006) (In agreeing to accept compensation in the form of equity awards, a claimant "[takes on] the risk and return expectations of a shareholder, rather than a creditor.").  The Court need not reach this issue, however.  Given the undisputed material facts, as a matter of law, Ms. Ortegon is not entitled to payment of anything under the unambiguous terms of the rescinded offer letter.

## **CONCLUSION**

The Court should affirm the Bankruptcy Court's decision and uphold the Trustee's determination that Mary Ortegon's Claim is disallowed and expunged.

Dated:   December 1, 2014
         New York, New York

                                        Respectfully submitted,

                                        HUGHES HUBBARD & REED LLP

                                        By:/s/ James B. Kobak, Jr.
                                            James B. Kobak, Jr.
                                            Ned H. Bassen
                                            Meaghan C. Gragg
                                        One Battery Park Plaza
                                        New York, New York 10004
                                        Telephone:  (212) 837-6000
                                        Facsimile:  (212) 422-4726
                                        Email:  james.kobak@hugheshubbard.com

                                        *Attorneys for Appellee James W. Giddens,*
                                        *Trustee for the SIPA Liquidation of*
                                        *Lehman Brothers Inc.*

Official Form 17C (12/14)

*[This certification must be appended to your brief if the length of your brief is calculated by maximum number of words or lines of text rather than number of pages.]*

## Certificate of Compliance With Rule 8015(a)(7)(B) or 8016(d)(2)

This brief complies with the type-volume limitation of Rule 8015(a)(7)(B) or 8016(d)(2) because:

☑ this brief contains 4,634 words, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D), or

☐ this brief uses a monospaced typeface having no more than 10½ characters per inch and contains *[state the number of]* lines of text, excluding the parts of the brief exempted by Rule 8015(a)(7)(B)(iii) or 8016(d)(2)(D).

_____   Date: 12/1/14
Signature

Print name of person signing certificate of compliance:
Meaghan C. Gragg