USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/20/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
In the Matter of                                          :
                                                          :
Lehman Brothers Holdings Inc.                             :
------------------------------------------------------------X       14-CV-8680 (VEC)
MARY ANNETTE ORTEGÓN,                                     :
                                       Appellant,         :        MEMORANDUM
                                                          :         OPINION
                       -against-                          :
                                                          :
JAMES W. GIDDENS, as Trustee for the SIPA                 :
Liquidation of Lehman Brothers Inc.,                      :
                                       Appellee.          :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Mary Annette Ortegón never worked a day at Lehman Brothers Inc. ("LBI"). LBI made her a job offer, which she accepted, but before her first day of work, LBI rescinded Ortegón's offer. Although the Court can certainly understand how disappointed she must be, the remedy she seeks in this case – payment of the $350,000 annual performance bonus that she would have been entitled to as an LBI employee – is not available to assuage her disappointment. Ortegón reasons that because LBI did not terminate her for cause (it rescinded her offer before she ever began to work), its decision to renege on her executed employment contract did not void LBI's contractual obligation to pay her a bonus. Giddens, as Trustee for LBI's liquidation, denied her claim, and Bankruptcy Judge Shelley Chapman awarded summary judgment for the Trustee. For the following reasons, the Court AFFIRMS the Bankruptcy Court's summary judgment for the Trustee.

## BACKGROUND

A small number of undisputed facts suffice to resolve this breach-of-contract dispute. After a month-long interview process, LBI sent Ortegón an offer letter, proposing to hire her as a

Business Chief Administrative Officer in its Fixed Income Division. JA 58. The letter, dated January 12, 2007, averred that LBI "expect[ed Ortegón's] employment to begin on or about January 18, 2007." *Id.* LBI offered Ortegón a "[b]i-weekly base salary of $5,769.23, which is the equivalent of $150,000 per year" and "[a] minimum bonus in the amount of $350,000, less applicable deductions, payable at the time the Firm pays its annual 2007 bonus distribution (on or about January 31, 2008)." *Id.* Immediately thereafter the letter provided:

> The foregoing salary will be paid for all periods of your active employment with the Firm in performance year 2007. The bonus amount set forth above will be paid at the time and in the amount stated except that it will not be payable if you have failed to obtain and/or maintain in good standing all applicable licenses and registrations or if, before the date of scheduled payment, you have resigned or have been terminated from the Firm because of misconduct, breach of Firm policies or rules, dishonesty, violation of laws or regulations, or substantial and continuing failure to perform employment duties or obligations satisfactorily. The bonus amount set forth above may be reduced in the event of an approved leave of absence during the applicable performance year.

*Id.* The letter also indicated that LBI could, in its discretion, pay an unspecified portion of Ortegón's bonus "in conditional equity awards." *Id.* Finally, LBI clarified that the letter was an offer of at-will employment:

> [T]his letter is not a contract of continuing employment. Your employment by the Firm is for no fixed term, and either you or the Firm may terminate the employment relationship at any time for any reason, subject to any applicable notice requirement. Currently, the Firm's notice policy . . . provides for 30 days' advance notice by the Firm to its officers in the event of an involuntary termination under certain circumstances. . . . [T]his offer of employment is conditional upon the successful completion of a background investigation, including reference, credit, criminal and other checks, as well as on your satisfactorily meeting all pre-employment requirements, including passing a pre-employment drug screen and producing documentation to have and maintain in good standing all applicable licenses and registrations.

JA 59.

After oral argument, the bankruptcy court held that the offer letter unambiguously imposed as a prerequisite for the bonus that Ortegón actually work for LBI. JA 488.

Accordingly, without making any factual findings, the bankruptcy court found that the Trustee was entitled to judgment and denied Ortegón's claim. *Id.*

The parties nevertheless discuss their views of additional facts that lend color to the dispute. Most contentious is the dispute over the basis for LBI's decision to rescind Ortegón's offer – LBI told Ortegón at the time, and still maintains, that it reached this decision as a result of Ortegón's planned participation in an Executive MBA ("EMBA") program, which "would require her to be out of the office 2 days/month for the foreseeable future," including her entire second week at LBI. JA 167. Ortegón maintains that she told LBI about her participation in the prestigious EMBA program early and often, including by mentioning it on her resume, JA 297, and that she offered not to participate in the program if it would pose an obstacle to her employment, JA 76. She avers that LBI's assertion that this was the basis for the rescission was pretext – Ortegón believes that she was terminated because LBI discovered that she had filed complaints of gender discrimination against two prior employers with the Equal Employment Opportunity Commission ("EEOC").[1] JA 124-25.

Both parties agree that after a January 18, 2007, meeting between Ortegón and several senior LBI officers, LBI rescinded Ortegón's offer of employment. Based on eccentricities with its human resources software, LBI could not reflect Ortegón as "un-hired," but rather had to "term[inate] her in the system." JA 303-05. The Financial Industry Regulatory Authority ("FINRA") listed Ortegón as an employee of LBI beginning and ending on January 17, 2007. JA 315-16.

Ortegón filed a claim with LBI's Trustee, who contested her claim. The bankruptcy court granted summary judgment to the Trustee after oral argument, finding that LBI had rescinded the

---

[1] "In 2008, Ortegon filed a charge of retaliation with the EEOC against LBI based on her suspicions." JA 47. This retaliation claim is not before the Court.

3

contract between the parties.  JA 484.  Noting that Ortegón had not brought a cause of action for wrongful rescission, the court emphasized its finding that Ortegón "never performed any work" and was therefore not entitled to a bonus that "was proposed compensation for work that would be performed."  JA 488.

## DISCUSSION

"A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*."  *Thakur v. S.J.P.B., Inc. (In re Thakur)*, 498 B.R. 410, 418-19 (S.D.N.Y. 2013) (citing *Overbaugh v. Household Bank, N.A. (In re Overbaugh)*, 559 F.3d 125, 129 (2d Cir. 2009), and Fed. R. Bankr. P. 8013).  "[O]n an appeal specifically from a bankruptcy court's summary judgment order, the standard of review is *de novo*, and the district court draws all factual inferences in favor of the non-moving party."  *Hanover Direct, Inc. v. T.R. Acquisition Corp. (In re T.R. Acquisition Corp.)*, 309 B.R. 830, 835 (S.D.N.Y. 2003) (Lynch, J.)); *accord Beier v. Beier*, No. 94-CV-2677(SS), 1995 WL 60026, at *2 (S.D.N.Y. Feb. 14, 1995) ("A reviewing court conducts a *de novo* review to determine whether a genuine issue of material fact exists that should preclude judgment as a matter of law.").  In this case, the bankruptcy court made a small number of factual findings (*e.g.*, "[Ortegón] never worked for LBI," JA 479) regarding uncontested matters and otherwise made only legal conclusions.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted).  In reviewing grants of summary judgment, courts "'construe the facts

in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant.'" *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (*per curiam*) (quoting *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79-80 (2d Cir. 2009)) (alteration omitted).

Ortegón alleges that the January 12, 2007, offer letter from LBI, which was executed by both parties, constituted a binding contract. This is more or less consistent with the holding of the bankruptcy court, which treated the offer letter as a binding contract that LBI chose to rescind before Ortegón began to work for LBI. JA 488. Assuming *arguendo* that there was a contract between LBI and Ortegón, Ortegón has not demonstrated that there is a genuine dispute of any material facts that should foreclose summary judgment.

On an intuitive level, Ortegón did not work for LBI and is therefore not entitled to a performance bonus. While Ortegón insists that she was an LBI "employee" in some sense, this dispute is academic; it is clear that she did not do a single minute of work for LBI, which is why she did not receive a single penny of salary.[2] Ortegón claims that the only reason that she did not perform under the contract – the reason that she did not work for LBI – is because LBI told her not to. She asserts that LBI could not unilaterally terminate its responsibility to pay her a $350,000 bonus by unilaterally terminating her employment contract prior to performance. This argument is a red herring. Under some circumstances, "a party cannot insist upon a condition

---

[2] Even if there were some legal significance that attached to the question of whether she was ever an LBI employee, the Court is not persuaded that Ortegón has shown the existence of an issue of fact. Ortegón relies heavily on the fact that LBI reported her to FINRA as an employee (beginning and ending on January 17, 2007, which was neither the date that she signed her contract nor a date that she reported to work for LBI), JA 322, but that filing is entirely consistent with an automated notification sent whenever someone is programmed into an H.R. system. On the other hand, Ortegón's offer letter conclusively establishes the parties' expectation that her employment did not begin with the signing of the contract but "[would] begin on or about January 18, 2007," her anticipated start date. JA 58. There is no dispute that LBI postponed that date so that LBI officials could speak with Ortegón regarding her participation in the EMBA program, JA 71, 122; ultimately the day that Ortegón's employment would begin never came to pass. Ortegón has not adduced evidence (or even alleged that evidence exists) that would alter this analysis.

precedent, when its non-performance has been caused by himself." *Amies v. Wesnofske*, 255 N.Y. 156, 162-63 (1931); *see also Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 348 (S.D.N.Y. 2013). But in *Amies*, the defendants had agreed to pay a commission on the closing of a real estate transaction to a broker, who performed all services that it was to perform under the contract. 255 N.Y. at 159-60. Ortegón performed none of the work for which she was slated to receive a $350,000 bonus. Had Ortegón worked at LBI, this case would be different. In such cases, regardless of an employee's at-will status and regardless of her employment status at the time that bonuses were paid, New York courts have required employers to honor their contractual obligation to pay employees' bonuses. *See Ryan v. Kellogg Partners Inst. Servs.*, 19 N.Y.3d 1, 14-15 (2012); *see also Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 32 (S.D.N.Y. 2010). But in *Ryan*, *Arakelian*, and the cases on which they relied – as in *Amies* – the party seeking to enforce the contract had expended the effort contemplated under the contract. In this case, the contract was withdrawn prior to any performance by Ortegón.

To understand the flaws in Ortegón's claim, it is worth noting what she is not alleging. The bankruptcy court emphasized that Ortegón did not sue for wrongful rescission of her contract. JA 484. She also did not sue for promissory estoppel (or allege any damages from reliance on the offer).[3] Ortegón only alleges that LBI breached her contract. Moreover, Ortegón does not allege that LBI breached her contract by terminating her (or by withdrawing her offer), which was well within LBI's rights because Ortegón was an at-will employee. JA 59, *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 336 (1987); *Mayer v. Publishers Clearing House*, 205 A.D.2d 506, 506 (2d Dep't 1994). Finally, Ortegón does not allege that she is owed salary from

---

[3] Other quasi-contract theories, such as unjust enrichment and *quantum meruit*, are not appropriate vehicles for this lawsuit because LBI was in no way "enriched" by Ortegón. *See Schatzki v. Weiser Capital Mgmt., LLC*, 995 F. Supp. 2d 251, 252-53 (S.D.N.Y. 2014).

LBI, presumably because such a claim would be nonsensical in light of the fact that she never worked at LBI.

Ortegón's claim is solely that LBI breached her contract by failing to pay her a bonus. This claim therefore hinges entirely on the nature of the bonus – if it was discretionary, compensatory, or contingent on Ortegón's remaining an LBI employee throughout the bonus period, then LBI was within its rights in not paying her the bonus.  *See, e.g., Truelove v. Ne. Capital & Advisory, Inc.*, 95 N.Y.2d 220, 225 (2000) (rejecting plaintiff's claim for a bonus from former employer when bonus was contingent on continued employment status); *Bellinson Law, LLC v. Iannucci*, 116 A.D.3d 401, 402 (1st Dep't 2014) (it is logically inconsistent to find that plaintiff did not perform under the contract but is entitled to reimbursement thereunder); *Kaplan v. Capital Co. of Am. LLC*, 298 A.D.2d 110, 111 (1st Dep't 2002) (there is no contractual right to discretionary bonuses).  If the bonus were akin to a signing bonus, on the other hand, then summary judgment would be inappropriate.  *See Wallace v. BMO Nesbitt Burns Corp.*, No. 01-CV-7998(JGK), 2002 WL 32063120, at *4 (S.D.N.Y. Nov. 25, 2002) ("It is still possible the plaintiff would be entitled to the 'sign-on bonus' whether or not [s]he was entitled to yearly compensation.").

To determine the nature of Ortegón's bonus, the obvious beginning point is the language of the offer letter itself.  The letter introduces the bonus by asserting that "[f]or the performance year 2007 . . . your compensation will be as follows," and then states the salary and the bonus. JA 58.  This sentence immediately introduces the idea that the bonus is "compensation" linked to "performance."  This theme is reemphasized in a subsequent paragraph describing Ortegón's "total compensation" as "combined base salary, bonus, and other compensation."  *Id.*  Once again, the language of the offer letter contemplates that the bonus will be part of what Ortegón would receive as "compensation" linked to her work at LBI – work that never transpired.

Ortegón does not identify any language suggesting that her bonus is more appropriately viewed as a signing bonus – language, for example, indicating that the bonus would be payable within a short period of time from her start date, *cf. Wallace*, 2002 WL 32063120, at *6 (30 days); *Lewis v. Rahman*, 147 F. Supp. 2d 225, 232 (S.D.N.Y. 2001) (on signing the contract); *Ross Stores, Inc. v. Lincks*, No. 13-CV-1876(SAS), 2013 WL 5629646, at *1 (S.D.N.Y. Oct. 4, 2013) (less than 30 days); *Matter of Clark v. N.Y. State Tax Comm'n*, 86 A.D.2d 691, 691 (3d Dep't 1982) ("upon execution of the contract"); *see also Dailey v. Societe Generale*, 889 F. Supp. 108, 110 (S.D.N.Y. 1995) (distinguishing between "sign-on bonus" and "performance bonus," which was paid after one year of performance); or would be a one-time employment event, *see Rojo v. Deutsche Bank*, No. 06-CV-13574(HB), 2010 WL 2560077, at *2 (S.D.N.Y. June 23, 2010) (distinguishing between one-time "sign-on" bonus and recurring compensatory bonus); *Brown v. Pension Bds.*, 488 F. Supp. 2d 395, 400 (S.D.N.Y. 2007) (signing bonus is a "one-time" event); *see also* JA 58 (referring to "the time the Firm pays its annual 2007 bonus distributions" and contemplating "future year's total compensation" as including the next annual bonus). Instead, Ortegón points to language purportedly limiting the occasions on which LBI could decline to pay her bonus to a set number of circumstances, none of which (she alleges) occurred. The offer letter provided:

> The foregoing salary will be paid for all periods of your active employment with the Firm in performance year 2007. The bonus amount set forth above will be paid at the time and in the amount stated except that it will not be payable if you have failed to obtain and/or maintain in good standing all applicable licenses and registrations or if, before the date of scheduled payment, you have resigned or have been terminated from the Firm because of misconduct, breach of Firm policies or rules, dishonesty, violation of laws or regulations, or substantial and continuing failure to perform employment duties or obligations satisfactorily. The bonus amount set forth above may be reduced in the event of an approved leave of absence during the applicable performance year.

JA 58. This language does not undermine the clear meaning of the text, which is that the bonus was compensation for work performed and not a signing bonus payable as long as Ortegón made it far enough along in the human resources process to be deemed an "employee." Notably, the final sentence, tying the bonus to the amount of time that Ortegón actually worked for LBI in a given year, further underscores the compensatory nature of the bonus; the bonus could be reduced to reflect the amount of time that Ortegón actually worked for LBI, which in this case was zero.

The list of reasons for a possible termination in the offer letter constitute reasons why Ortegón might receive no bonus despite having done some work – and therefore having arguably "earned" some part of the bonus. But they do not transmute what is otherwise clearly a performance bonus into a signing bonus, payable despite the absence of work for which Ortegón could be compensated.[4]

## CONCLUSION

For the foregoing reasons, the bankruptcy court's summary judgment for the Trustee is AFFIRMED. The Clerk of the Court is respectfully directed to terminate the case.

**SO ORDERED.**

**Date: January 20, 2015**  
**New York, New York**

**VALERIE CAPRONI**  
**United States District Judge**

---

[4] Because summary judgment is appropriate on this ground, the Court declines to discuss other equally fruitful grounds including, for example, whether Ortegón "satisfactorily [met] all pre-employment requirements." JA 159. The Court does note that the offer letter is crystal clear that "[a]t the Firm's discretion" any "portion of [Ortegón's] 2007 and future years' total compensation [including] bonus[] and other compensation[] will be payable in conditional equity awards," which are now close to valueless. JA 58, 478.